_____ FILED  _____ ENTERED
_____ LODGED  _____ RECEIVED

OCT 29 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

Magistrate Judge Brian A. Tsuchida

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSE SANDOVAL ZUNIGA, and

EDGAR RIVAS ROBLES,

Defendants.

CASE NO. MJ25-686

COMPLAINT for VIOLATION

21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846

(Felony)

BEFORE, Brian A. Tsuchida, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE

### (Conspiracy to Distribute Controlled Substances)

Beginning at a time unknown, and continuing until at least October 28, 2025, in King and Lewis Counties, within the Western District of Washington, and elsewhere, JOSE SANDOVAL ZUNIGA, EDGAR RIVAS ROBLES, and others known and unknown, did knowingly and intentionally conspire to distribute controlled substances, including: N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a substance controlled under Title 21, United States Code.

Complaint - 1
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that with respect to JOSE SANDOVAL ZUNIGA and EDGAR RIVAS ROBLES, their conduct as members of the conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count 1, involved 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(b)(1)(A).

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

## COUNT 2

### (Possession of a Controlled Substance with Intent to Distribute)

On or about October 28, 2025, in Lewis County, within the Western District of Washington, and elsewhere, JOSE SANDOVAL ZUNIGA and EDGAR RIVAS ROBLES, did knowingly and intentionally possess, with the intent to distribute, and aid and abet the possession of, with the intent to distribute, a controlled substance, including: N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(b)(1)(A).

It is further alleged that this offense was committed during and in furtherance of the offense alleged in Count 1 (Conspiracy to Distribute Controlled Substances).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

//

//

//

Complaint - 2
*United States v. Sandoval Zuniga, et al.*, MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

And the complainant states that this Complaint is based on the following information:

I, Grayson Seidel, being first duly sworn on oath, depose and say:

## AGENT BACKGROUND

1.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA) and have been so employed since April 2024. I am currently assigned to the Seattle Field Division. In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801, et seq., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 620 hours of classroom training including, but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. In my role as a Special Agent, I have participated in investigations of individuals who have smuggled, received, and distributed controlled substances, as well as the seizure of illegal drugs and proceeds of the sale of those illegal drugs. Furthermore, I am familiar with the ways in which drug traffickers conduct their business, including but not limited to their methods of importing and distributing drugs, their use of cellular telephones, and their use of numerical codes and code words to conduct their illegal transactions.

2.     As a DEA Special Agent, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by various traffickers in their efforts to import, export, conceal, and distribute controlled substances. I am also familiar with the manner in which drug traffickers use vehicles to conceal,

Complaint - 3
*United States v. Sandoval Zuniga, et al.*, MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

transport, or conduct drug transactions and/or exchange drug proceeds in their unlawful operations.

3. I have participated in investigations that involved money launderers and drug traffickers using telephones to communicate with their criminal associates and those working with law enforcement, such as confidential informants, cooperating individuals, and undercover officers. I have also conducted investigative activities related to federal wiretap investigations. As part of my experience with wiretaps, I have reviewed transcripts and line sheets (prepared by linguists) documenting the content of intercepted conversations involving the trafficking of narcotics, by persons who used some form of code to thwart law enforcement. I am familiar with how money launderers and drug traffickers speak to each other and generally conduct business. For example, I am aware that money launderers and drug traffickers discussing criminal matters over telephones often speak in code or in vague terms. I am also aware that these subjects frequently: (1) provide false or fictious subscriber information to the service providers, (2) use phones with subscriber identities other than their own, and (3) change phones to avoid detection by law enforcement. This training and experience form the basis for my opinions expressed below.

4. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

## SUMMARY OF INVESTIGATION

5. In Fall 2024, investigators from DEA Seattle and the Seattle Police Department (SPD) began a joint investigation into a drug trafficking organization (DTO) that distributes fentanyl, cocaine, methamphetamine, and heroin in the Western District of

Complaint - 4
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington. Throughout this investigation, a DEA Confidential Source (hereafter "CS1"[1]) communicated with "Robert," who investigators subsequently identified to be Jose NAVARRO HERNANDEZ, to purchase fentanyl powder, fentanyl pills, heroin, cocaine, and methamphetamine, as well as several firearms. During the initial stages of the investigation, CS1 would place drug orders and NAVARRO HERNANDEZ would send one of his two primary runners, Luis LAMAS GUZMAN or Eduardo VILLAVICENCIO SALIDO, to meet with CS1 and deliver the drugs. On two later occasions, NAVARRO HERNANDEZ sent Pedro GUZMAN TAPIA and Sylvestre RAMOS to deliver multiple pounds of methamphetamine. During several later deals, CS1 also acquired firearms from NAVARRO HERNANDEZ and his two main runners, LAMAS GUZMAN and VILLAVICENCIO SALIDO.

6.     During a controlled buy on August 13, 2025, MORALES MEDINA accompanied LAMAS GUZMAN to the meet and delivered four AR-type rifles and 49.6 grams of fentanyl to CS1. These individuals and events were charged in *United States v. Navarro Hernandez et al.,* CR25-213 KKE.

---

[1] CS1 has no criminal/administrative arrest history. Before CS1 began to cooperate with law enforcement, CS1 was engaged in money laundering and drug trafficking activity. Moreover, CS1 has acknowledged that prior to CS1's cooperation with law enforcement, CS1 was present during the collection of drug debts during which time the individual that owed the debt was assaulted by members of the DTMLO with which CS1 was previously affiliated.

CS1 understands that he/she must provide only truthful information to law enforcement investigators. To my knowledge, CS1 has not provided false information during this, or in other investigations. However, during the time that CS1 has been cooperating with law enforcement, CS1 has been counseled regarding the proper handling and/or retention of electronic evidence. CS1 has been paid in this investigation both when he/she has provided information and when he/she has engaged in undercover operations at the direction of law enforcement. CS1 is also receiving immigration benefits, including deferred action and work authorization.

CS1 lives in the community and wishes to remain anonymous for fear of reprisals and retribution. However, CS1 has expressed a willingness to testify if his/her identity could be protected.

Complaint - 5
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.      During the firearm and fentanyl deal on August 13, 2025, in which LAMAS GUZMAN and MORALES MEDINA delivered four AR-type rifles and 49.6 grams[2] of fentanyl to CS1, investigators identified SANDOVAL ZUNIGA as a weapons source of supply. Specifically, investigators observed LAMAS GUZMAN and MORALES MEDINA meet with a vehicle driven by SANDOVAL ZUNIGA immediately prior to the deal with CS1. During that surveillance, investigators observed an unknown male transfer a bag, suspected of containing firearms, from SANDOVAL ZUNIGA's vehicle to LAMAS GUZMAN's vehicle.

8.      On October 27, 2025, the Honorable Brian A. Tsuchida authorized the search of 12 locations, 11 vehicles, and 11 individuals. *See* MJ25-670 (W.D. Wash. Oct. 27, 2024). A search of the person of Jose SANDOVAL ZUNIGA was included among the authorized search warrants, as were his residence in Sammamish (20916 NE 17th St, Sammamish, WA), a largely undeveloped 3.6-acre parcel in Centralia that is owned by his romantic partner E.G. (1708 Kresky Ave, Centralia, WA), the vehicle SANDOVAL ZUNIGA drove to deliver the firearms on August 13, 2025 (a gray 2015 Jeep Grand Cherokee bearing WA plate ATX7338, hereafter "TV9"), and a truck registered in SANDOVAL ZUNIGA's name at the Kresky address (a blue 2022 GMC Sierra bearing WA plate D08634G, hereafter "TV12").

9.      On October 28, 2025, investigators executed these and many of the other warrants. During a search of SANDOVAL ZUNIGA's TV12, investigators recovered approximately 1.6 kilograms of suspected fentanyl and smaller amounts of suspected cocaine. During a search of SANDOVAL ZUNIGA's residence at 20916 NE 17th St, Sammamish, WA, investigators recovered over 650 grams of suspected heroin, over 400 grams of suspected fentanyl, and a loaded .45 caliber semiautomatic pistol. Finally, during a search of 1708 Kresky Ave, Centralia, WA, investigators encountered Edgar RIVAS

_____

[2] All controlled substance amounts, currency amounts, and times listed herein are approximate.

Complaint - 6
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ROBLES, who was apparently living on the property, and recovered over 25 kilograms of fentanyl powder and over 90,000 fentanyl pills, as well as twenty-four firearms, including multiple semiautomatic pistols and assault-type rifles.

## STATEMENT OF PROBABLE CAUSE

**A.    Controlled Purchase of Fentanyl Powder and Four Rifles from LAMAS GUZMAN and MORALES MEDINA Supplied by SANDOVAL ZUNIGA on August 13, 2025**

10.    At 4:04 p.m., on August 13, 2025, through remote surveillance at the known residence of LAMAS GUZMAN (16831 52nd Ave W, Apt F15, Lynnwood, WA) investigators observed LAMAS GUZMAN's black 2016 Ford F-150 bearing WA plate D07085G) (hereafter "TV3") park in front of the residence, LAMAS GUZMAN exit the driver's seat, and LAMAS GUZMAN then enter his apartment. Shortly after, investigators observed LAMAS GUZMAN exit his apartment, appearing to be carrying a dog, and enter the driver's seat of TV3. Around the same time, an unknown individual (later identified as Fabian MORALES MEDINA) was seen entering the passenger seat of TV3. Investigators then observed TV3 leave the area. *See* photograph below.



11.    Shortly thereafter, investigators observed the GPS tracking data for TV3 to be in the vicinity of 15332 Pacific Highway, Lynnwood, WA. Then, at 4:30 p.m., TFO Bourdon observed TV3 parked in the vicinity of the Xclusive Barber and Beauty Supply Shop. At 4:37 p.m., SA Farley observed LAMAS GUZMAN sitting with MORALES

Complaint - 7
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

MEDINA outside the Xclusive Barbershop. *See* photograph below of LAMAS GUZMAN wearing the black shirt and MORALES MEDINA wearing the pink shirt.



12.     At 5:30 p.m., SA Farley observed TV9 drive into the parking lot of the Xclusive Barbershop and park near TV3. Subsequently, SA Farley observed a male (UM1) exit the front passenger side of TV9 and access the rear compartment. SA Farley then observed UM1 remove bags resembling rifle bags from the rear compartment of TV9. UM1 then carried the bags out of view as he walked to the passenger side of TV3. SA Farley then observed UM1, who was empty handed, return to close the trunk of TV9 and walk towards the passenger side of TV9. Investigators observed TV9 back out of the spot next to TV3 and then drive away. *See* photographs of UM1 removing what investigators believed to be bags containing the rifles.



Complaint - 8
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13.   Investigators maintained surveillance on TV9 until 5:40 p.m., when it parked at La Palmera Family Mexican Restaurant, located at 11731 Airport Rd, Everett, WA. SA Farley then observed UM1 and the driver (later identified as Jose SANDOVAL ZUNIGA),[3] exit TV9 and enter the restaurant. *See* photographs below of SANDOVAL ZUNIGA and UM1 entering the restaurant and then seated at a table inside the restaurant.

 

14.   At 5:30 p.m., SA Parr, SA Seidel, and TFO Bourdon met with CS1 at a staging location. Investigators searched CS1's person and vehicle. No contraband was found. SA Parr, SA Seidel, and TFO Bourdon then provided CS1 with $7,200 of law enforcement funds for the purchase from LAMAS GUZMAN. SA Seidel and SA Parr equipped CS1 with video and recording devices. Investigators then traveled with CS1 as he/she drove from the staging location to the planned meet location in Edmonds, WA.

15.   At 6:25 p.m., investigators observed CS1 park at the agreed upon meeting location. At 6:31 p.m., SA Seidel observed TV3 arrive in the lot and park next to CS1's vehicle. Shortly after, SA Seidel observed MORALES MEDINA exit the passenger door of TV3, open the rear passenger side door of TV3, remove a large black item from TV3,

---

[3] Investigators identified Jose SANDOVAL ZUNIGA based on surveillance photos when compared to SANDOVAL ZUNIGA's Washington and Arizona driver's licenses.

Complaint - 9
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and place the item in the driver's side rear door of CS1's vehicle. *See* photograph below on the left. SA Seidel then observed MORALES MEDINA get in the passenger seat of CS1's vehicle. *See* photograph below on the right.

 

16.    Shortly after, SA Seidel observed MORALES MEDINA exit CS1's vehicle and get back in the passenger seat of TV3. Investigators maintained surveillance on TV3 as it exited the lot.

17.    The transfer of the fentanyl powder to CS1 was captured by video recording equipment inside CS1's vehicle. *See* screenshots below taken from the video recording.

  

18.    While other investigators maintained surveillance of LAMAS GUZMAN and MORALES MEDINA in TV3, SA Parr, SA Seidel, and TFO Bourdon followed CS1 to a debrief location. At the debrief location investigators searched CS1 and CS1's vehicle. No contraband was found. Investigators then took custody of the four rifles and suspected fentanyl powder from CS1. During this time, SA Kianna Parr and TFO Bourdon debriefed CS1 on the controlled purchase. CS1 informed investigators that during the controlled

Complaint - 10
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

purchase, LAMAS GUZMAN had rolled down TV3's window and told CS1 that MORALES MEDINA was going to get out of TV3 and give the items to CS1. *See* photographs below of the firearms and fentanyl powder retrieved from CS1's vehicle and a screenshot of LAMAS GUZMAN talking to CS1 prior to driving away.



19.     Following the delivery of the fentanyl powder and firearms, investigators maintained surveillance on LAMAS GUZMAN and MORALES MEDINA as they traveled in TV3. At 7:05 p.m., investigators observed TV3 ultimately arrive in the parking lot in front of Palmera Family Mexican Restaurant. SA Stark then observed LAMAS GUZMAN and MORALES MEDINA get out of TV3 and enter the restaurant. Around this time, TFA Vasquez entered the restaurant and observed LAMAS GUZMAN, MORALES MEDINA, SANDOVAL ZUNIGA, and UM1 sitting at a table together. *See* photograph below.

//

//

//

Complaint - 11
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



20.    At 7:56 p.m., TFA Vasquez observed LAMAS GUZMAN and MORALES MEDINA exit the restaurant, and other investigators observed TV3 exit the parking lot. At 8:10 p.m., TFA Vasquez observed UM1, and SANDOVAL ZUNIGA exit the restaurant. Investigators then observed UM1 and SANDOVAL ZUNIGA return to TV9 and depart the area.

21.    Investigators maintained surveillance on TV9 until at 8:40 p.m., when investigators lost surveillance on TV9 in the vicinity of the Safeway located at 630 228th Ave NE, Sammamish, WA. Up to that point, TV9 had performed apparent countersurveillance, i.e., making an erratic turn, retracing its path, and parking before quickly resuming travel, making it difficult for investigators to maintain surveillance on TV9. Investigators later learned that SANDOVAL ZUNIGA resided at 20916 NE 17th St, Sammamish, Washington (hereafter "TL6"), which is located 1.8 miles from where investigators lost sight of SANDOVAL ZUNIGA and UM1.

22.    At the conclusion of surveillance, SA Parr and SA Seidel transported the rifles and fentanyl powder to DEA Seattle. Investigators sent the suspected fentanyl to the DEA Western Lab where it tested positive for fentanyl with a net weight of 49.6 grams.

Complaint - 12
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.    Toll Analysis Shows that TT22 (SANDOVAL ZUNIGA) is a Top Contact of TT17 (LAMAS GUZMAN) During Controlled Purchase on August 13, 2025**

23.    After the controlled purchase with LAMAS GUZMAN and MORALES MEDINA on August 13, 2025, investigators conducted a review of WhatsApp PRTT data for TT17 (known to be utilized by LAMAS GUZMAN). From July 1, 2025, to August 31, 2025, investigators observed TT17 had 586 contacts with 425-465-1128 (TT22); 115 of these were on August 13, 2025.

24.    Specifically, between 4:33 p.m. (the time TFO Bourdon observed LAMAS GUZMAN and MORALES MEDINA at Xclusive Barbershop) and 5:30 p.m. (the time that SA Farley observed TV9 with UM1 and SANDOVAL ZUNIGA arrive before the transfer of the bag into TV3), TT17 had 26 contacts with TT22. During this time, the only other WhatsApp contacts with TT17 (LAMAS GUZMAN) were 425-474-0061 (TT20) (known to investigators to be used by NAVARRO HERNANDEZ) and CS1's WhatsApp account.

25.    After the controlled purchase, between 6:30 p.m. and 7:05 p.m. (the time LAMAS GUZMAN and MORALES MEDINA met back up with UM1 and SANDOVAL ZUNIGA at La Palmera Family Restaurant), TT17 (LAMAS GUZMAN) had 8 contacts with TT22. During this time, the other WhatsApp contacts were TT13 (another number used by LAMAS GUZMAN), the WhatsApp account operated by CS1, and one additional call with a number operated by an unknown individual.

26.    Based on the observations of the transfer of firearms by UM1 and SANDOVAL ZUNIGA to LAMAS GUZMAN and MORALES MEDINA followed by LAMAS GUZMAN and MORALES MEDINA's delivery of these firearms to CS1, in combination with the timing and frequency of contacts between TT17 (LAMAS GUZMAN) and TT22 on August 13, 2025, investigators believed that the user of TT22 supplied LAMAS GUZMAN with the firearms subsequently delivered to CS1. Based upon

Complaint - 13
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

additional investigation, including information obtained from GPS location data warrant for TT22, investigators identified the user of TT22 to be SANDOVAL ZUNIGA.

**C.    Identification of SANDOVAL ZUNIGA and Suspected Stash Location at 1708 Kresky Ave, Centralia, WA (TL7)**

27.    Investigators subsequently obtained a tracking warrant for TT22 and over the course of the next few weeks, utilizing location data for TT22 and physical surveillance, determined that SANDOVAL ZUNIGA was residing at 20916 NE 17th St, Sammamish, WA (TL6). Based upon location data for TT22 and surveillance, investigators also learned that SANDOVAL ZUNIGA utilized a largely undeveloped 3.6-acre parcel of land with multiple outbuildings located at 1708 Kresky Ave, Centralia, WA (hereafter "TL7") (depicted in photographs below).

 

28.    Based upon a review of open-source property records for Lewis County, investigators know that E.G. is the owner of TL7, with a mailing and taxpayer address of 21015 SE 14th Pl, Sammamish, WA. Based upon a review of publicly available social media posts, investigators believe that SANDOVAL ZUNIGA and E.G. are domestic partners. And, as indicated above, TV12 is registered to SANDOVAL ZUNIGA at TL7.

29.    Of note, on October 4, 2025, after TV12 had departed TL7, investigators conducted a traffic stop of TV12. SANDOVAL ZUNIGA was driving TV12 and was

Complaint - 14
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

identified by his Arizona Identification Card. SANDOVAL ZUNIGA was accompanied by a small child.

30.    Finally, based upon a review of location data for TT22, investigators know that the user of TT22 (suspected to be SANDOVAL ZUNIGA) traveled from TL6 to TL7 on the evening of September 29, 2025. Specifically, TT22 departed the area of TL6 at approximately 5:12 p.m., arriving in the area of TL7 at 9:32 p.m. Investigators noted that TT22 appeared to remain stationary in the area of TL7 until 2:52 a.m., on September 30, 2025, when TT22 began to travel north. A review of location data for TT22 shows that the user of the device (suspected to be SANDOVAL ZUNIGA) returned to the area of TL6 at approximately 4:40 a.m. on September 30, 2025.

**D.    Identification of RIVAS ROBLES and Association with Centralia Stash Location**

41.    On October 22, 2025, at 12:00 p.m., Centralia Police Department Sgt. Barela approached a male at TL7 in order to identify who resided on the property. Sgt. Barela identified the male as Edgar RIVAS ROBLES[4] who matched the physical characteristics of an individual observed by investigators at TL7 on October 19, 2025.

42.    RIVAS ROBLES informed Sgt. Barela that he was living in the gray cargo trailer on the property and that he was "cleaning" the property for "Jose."

**E.    SANDOVAL ZUNIGA's Trip to Arizona and Traffic Stop in Washington**

43.    On October 23, 2025, investigators obtained GPS location data warrants for, *inter alia*, 425-403-5809 (TT24), a phone number known by investigators to be used by SANDOVAL ZUNIGA. When investigators began receiving location data pursuant to the court order on October 24, 2025, investigators observed TT24 to be in Mesa, Arizona, outside of Pheonix, AZ.

---

[4] RIVAS ROBLES was identified by Sgt. Barela, who was present in April 2024, when RIVAS ROBLES was arrested in Centralia, WA for possession of methamphetamine. Additionally, RIVAS ROBLES listed TL7 as his address during booking.

Complaint - 15
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

44.    In the morning of October 27, 2025, investigators observed that TT24 had begun traveling northbound out of the Pheonix, AZ area. Throughout the day, investigators observed TT24 continue to travel northbound into Nevada, passing through Las Vegas at approximately 2:51 p.m. Investigators continued monitoring TT24's location as the device traveled north until around 7:13 p.m., when investigators observed that TT24 stopped in Ely, Nevada, before continuing north at 12:17 a.m. on October 28, 2025.

45.    While investigators maintained remote surveillance via GPS ping for TT24, through a law enforcement database, investigators remotely observed TV12 in the area of Twin Falls, ID at 3:41 a.m. Later in the morning, at 7:23 a.m., DEA investigators located TV12 east of Bakers City, OR, based upon the location data for TT24.

46.    DEA Boise investigators maintained surveillance until at 8:49 a.m., when DEA Yakima continued surveillance of TV12 near Pendelton, OR. DEA Yakima investigators maintained surveillance until at 11:56 a.m., while traveling on I-90 West, DEA Seattle, along with FBI Seattle and Seattle Police Department (SPD) continued surveillance of TV12 near Snoqualmie Pass, near I-90 mile marker 74.

47.    Investigators maintained surveillance on TV12 until, at 12:46 p.m., investigators followed TV12 off on Exit 17 of I-90 W. At 12:49 p.m., SPD officers, accompanied by a DEA Seattle agent, stopped TV12 as it pulled into McDonald's at 5526 E Lake Sammamish Pkwy SE, Issaquah, WA.

48.    Investigators identified SANDOVAL ZUNIGA as the driver and a Hispanic male and young child as the passengers. During a warranted search of the vehicle, investigators found a kilogram brick that field-tested positive for fentanyl (1086 grams), as well as an additional partial brick of over 600 grams that also field-tested positive for fentanyl (680.4 grams). Investigators also located seven smaller bindles of suspected narcotics (3 tested positive for cocaine, ranging from 20 grams to 63 grams).

//

//

Complaint - 16
*United States v. Sandoval Zuniga, et al.*, MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**E.    Search Warrant at SANDOVAL's Residence (TL6)**

49.    Shortly after investigators stopped TV12 in Issaquah, WA, investigators executed a search warrant at SANDOVAL's residence (TL6). At the residence, investigators encountered E.G. and a young child. During a search of the residence, investigators located over 650 grams of a substance that field-tested positive for heroin and over 400 grams of a substance that field-tested positive for fentanyl. In the kitchen in a cabinet above the microwave, investigators also located a Kimber 1911 KW114 .45 caliber pistol loaded with seven rounds in the magazine.

**F.    Search Warrant at Centralia Stash House (TL7)**

50.    Following the stop of SANDOVAL ZUNIGA in Issaquah, WA, investigators also executed a search warrant at TL7. During the execution of that search, investigators encountered RIVAS ROBLES who was living in a shipping container on the property.

51.    During the search of TL7, investigators found over 25 kilograms of suspected fentanyl powder (in two separate storage totes), over 90,000 suspected fentanyl pills, and 24 firearms, including handguns and rifles, as well as thousands of rounds of ammunition. *See* photographs below.



52.    Based upon my training and experience, I know that these amounts of fentanyl are distribution amounts. Furthermore, the manner in which these drugs were

Complaint - 17
*United States v. Sandoval Zuniga, et al.,* MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

packaged was consistent with possession of these controlled substances for the purpose of distribution.

53.    Finally, based my training and experience, I believe that RIVAS ROBLES was acting as the stash house operator at TL7 at SANDOVAL ZUNIGA's direction. Based upon my training and experience, I know that individuals such as RIVAS ROBLES are used by individuals such as SANDOVAL ZUNIGA to monitor and protect stash locations (such as TL7) from rival DTO members or law enforcement. Investigators further believe that the "Jose" referenced by RIVAS ROBLES during discussion with Sgt. Barela on October 22, 2025 (discussed above), is Jose SANDOVAL ZUNIGA.

## CONCLUSION

54.    Based on the above facts, I respectfully submit that there is probable cause to believe that JOSE SANDOVAL ZUNIGA and EDGAR RIVAS ROBLES conspired to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and also knowingly and intentionally possessed, with the intent to distribute, and aid and abet the possession of, with the intent to distribute, controlled

//

//

//

Complaint - 18
*United States v. Sandoval Zuniga, et al.*, MJ25-686
USAO# 2024R01294

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

substances in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

GRAYSON SEIDEL, Complainant
Special Agent, DEA

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendants committed the offenses set forth in the Complaint.

Dated this 29th day of October, 2025.

HON. BRIAN A TSUCHIDA
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970